```
                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
                           HOUSTON DIVISION


CENTAURUS UNITY, LP d/b/a           §
UNITY POINTE APARTMENTS             §
                                    §
                Plaintiff,          §
                                    §
v.                                  §    CIVIL ACTION NO. H-10-4114
                                    §
LEXINGTON INSURANCE COMPANY,        §
CUNNINGHAM LINDSEY, U.S., INC.,     §
RANDAL ORDNER, INDIVIDUALLY,        §
ROBERT HOVANEC, INDIVIDUALLY,       §
LARRY COUVILLON, INDIVIDUALLY,      §
PAUL ODOM, INDIVIDUALLY,            §
TED W. ALLEN & ASSOCIATES,          §
INC., and JOHN JAY,                 §
INDIVIDUALLY,                       §
                                    §
                Defendants.         §
```

## MEMORANDUM OPINION AND ORDER OF REMAND

Centaurus Unity, LP d/b/a Unity Pointe Apartments ("Centaurus") brings this action against Lexington Insurance Company ("Lexington"), Cunningham Lindsey, U.S., Inc. ("Cunningham"), Ted W. Allen & Associates, Inc. ("Allen & Associates") and individually against Randal Ordner, Robert Hovanec, Larry Couvillon, Paul Odom, and John Jay, alleging that the defendants wrongfully handled an insurance claim for damage to Centaurus's property. On October 26, 2010, Lexington removed the action from the 281st Judicial District Court of Harris County, Texas, where it was filed under Cause No. 2010-57767. Pending before the court is Plaintiff's Motion to Remand (Docket Entry

No. 11). For the reasons explained below, the plaintiff's motion will be granted.

### I. Factual and Procedural Background

In mid-2008 Centaurus purchased a commercial insurance policy from Lexington through Allen & Associates to cover Unity Pointe Apartments, a property Centaurus owned in Houston.[1] The policy included coverage for wind and water damage, as well as for business losses.[2] In the evening of September 12 and the early morning of September 13, 2008, Unity Pointe Apartments was damaged by Hurricane Ike, a category 2 hurricane that inflicted substantial destruction throughout the Texas Gulf Coast area.[3] Centaurus subsequently submitted a claim to Lexington, which assigned Cunningham to assist in the investigation and adjustment process.[4]

Centaurus alleges that Lexington has wrongfully withheld payment on the policy and that Cunningham and Lexington failed to adequately inspect and adjust the claim.[5] On September 10, 2010, Centaurus filed suit in Texas state court alleging multiple causes of action against Lexington, Cunningham, and Cunningham's

---

[1] Plaintiff's Original Petition ("Plaintiff's Petition"), Exhibit A to Notice of Removal, Docket Entry No. 1, ¶¶ 12, 14-15.

[2] Id. ¶ 15.

[3] Id. ¶ 16.

[4] Id. ¶ 17-18, 21.

[5] Id. ¶¶ 21-24.

-2-

individual adjusters, including negligence, breach of contract, violations of the Texas Deceptive Trade Practices Act (DTPA), violations of the Texas Insurance Code, breach of the common law duty of good faith and fair dealing, breach of fiduciary duty, fraud, and negligent misrepresentation.[6] Centaurus also alleges that Allen & Associates made negligent misrepresentations when it sold Centaurus the policy.[7]

Lexington removed the action contending that this court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the proper parties and because both parties agree that the amount in controversy exceeds $75,000.[8] Centaurus and defendants Cunningham, Ordner, Couvillon, Hovanec, Odom, Jay, and Allen & Associates are citizens of Texas for purposes of determining diversity, while Lexington is a Delaware corporation with its principal place of business in Massachusetts.[9] Lexington nonetheless maintains that complete diversity exists because the Texas defendants are improperly or fraudulently joined.[10] Centaurus moved to remand the action arguing that the lack of complete diversity between it and the defendants

---

[6]Id. ¶¶ 31–74.

[7]Id. ¶¶ 79–81.

[8]Notice of Removal, Docket Entry No. 1, ¶ 14.

[9]Id. ¶¶ 15–22.

[10]Id. 18–22.

defeats the court's subject-matter jurisdiction.[11]  Cunningham, along with adjusters Ordner, Hovanec, Couvillon, Odom, and Jay (collectively, the "Adjuster Defendants"), responded that they are improperly joined because Centaurus has not alleged viable causes of action against them.[12]  Lexington also responded, arguing that the Adjuster Defendants are improperly joined and that Allen & Associates is fraudulently misjoined.[13]

## II.  Removal Standard

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed.  See Manguno v. Prudential Prop. and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441).  The removing party bears the burden of establishing that a state-court suit is removable to federal court.  Id. (citing DeAquilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995), cert. denied, 116 S. Ct. 180 (1995)).  To determine whether there is removal jurisdiction, the claims in the state court petition are considered as they existed at the time of removal.  Manguno, 276 F.3d at 723.

---

[11]Plaintiff's Motion to Remand, Docket Entry No. 11, pp. 4-5.

[12]Cunningham Lindsey U.S. Inc., Randal Ordner, Robert Hovanec, Larry Couvillon, Paul Odom, and John Owen Jay's Response in Opposition to Plaintiff's Motion to Remand ("Cunningham's Response"), Docket Entry No. 13, ¶¶ 7-8.

[13]Defendant Lexington Insurance Company's Memorandum in Opposition to Plaintiff Centaurus Unity, L.P. d/b/a Unity Pointe Apartments' Motion to Remand ("Lexington's Response"), Docket Entry No. 12, pp. 4-10.

Doubts about the propriety of removal are to be resolved in favor of remand. See In re Hot-Hed Inc., 477 F.3d 320, 323 (5th Cir. 2007) (per curiam).

### III. Improper Joinder Analysis

**A. Applicable Law**

If federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, an action is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b). A case may be removed despite the presence of a resident defendant if the removing defendant shows that the resident defendant was improperly joined. Salazar v. Allstate Texas Lloyd's, Inc., 455 F.3d 571, 574 (5th Cir. 2006). A removing party attempting to prove improper joinder carries a heavy burden. Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 312 (5th Cir. 2002). To establish that a nondiverse defendant has been improperly joined to defeat diversity jurisdiction the removing party must prove either (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc), cert. denied, 125 S. Ct. 1825 (2005). Since the parties do not dispute that all the defendants other than Lexington are Texas citizens, only the second method is at issue in

this action. "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or nondiverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or nondiverse] defendant." Id.

The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). "The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." Id. "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Smallwood, 385 F.3d at 574. In Smallwood the Fifth Circuit provided several examples of evidence that might invalidate a plaintiff's cause of action under a pierce-the-pleadings inquiry: "For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." Id. at 574 n.12. "[T]he focus of

the inquiry must be on the joinder, not the merits of the plaintiff's case." Id. at 573.

When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendant alone, the requisite showing has not been made. Id. at 575. Furthermore, in deciding whether a party was improperly joined, all unchallenged factual allegations, including those alleged in the petition, are taken into account in the light most favorable to the plaintiff, id., and all contested factual issues and ambiguities of state law are resolved in favor of the plaintiff. Gasch, 491 F.3d at 281.

**B.  Centaurus's Allegations**

In reciting the background facts underlying its causes of action in the state-court petition, Centaurus alleges the following with respect to the Adjuster Defendants:

> 18.  In the aftermath [of Hurricane Ike], Plaintiff relied on Lexington, Cunningham Lindsey and the Adjusters to help begin the slow and painful rebuilding process. . . .
>
> . . . .
>
> 21.  In the months following Hurricane Ike, Plaintiff provided information to Cunningham Lindsey and the Adjusters, as well as opportunities for the Adjusters to inspect the Property. Both Cunningham Lindsey and the Adjusters, however, failed to conduct any independent or fair investigation into the damage to the Property. Moreover, the Adjusters failed to properly inspect the Property and their related damages, failed to properly request information, failed to properly investigate

the claims, failed to respond to requests for information from Plaintiff, failed to timely evaluate the claims, failed to timely estimate the claims, and failed to timely and properly report to Lexington and make recommendations to Lexington with regard to Plaintiff's claims.

22. . . . Regardless, the Adjusters failed and refused to respond to the inquiries, and failed to properly adjust the claims and losses. As a result, to this date, Plaintiff has not received proper payment for the claims, even though notification was provided over one year ago.

23. Lexington, Cunningham Lindsey and the Adjusters have all failed to explain the reasons for failing to offer adequate compensation for the damage to the Property. . . .

24. Defendants have further failed to affirm or deny coverage within a reasonable time. Plaintiff also did not receive timely indication of acceptance or rejection regarding the full and entire claim in writing from any of the Defendants in a timely manner.

25. . . . Ultimately, Defendants performed a result-oriented investigation of Plaintiff's claims that resulted in an unfair, biased and inequitable evaluation of Plaintiff's losses.

26. Defendants have failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claims, beginning an investigation of Plaintiff's claims, and requesting all information reasonably necessary to investigate Plaintiff's claims within the time period mandated by statute.

. . . .

28. In addition, Allen [& Associates] has failed to place adequate and proper coverage for Plaintiff causing Plaintiff to suffer further damages. . . .[14]

---

[14]Plaintiff's Petition, Exhibit A to Notice of Removal, Docket Entry No. 1, ¶¶ 17-28.

-8-

Centaurus then alleges a variety of causes of action against Lexington and the Adjuster Defendants. Centaurus's alleged causes of action for the most part consist of mere recitations of Texas common law and statutes and do not distinguish the facts that are alleged against the Adjuster Defendants from those that are alleged against Lexington. In some instances, however, Centaurus alleges specific misconduct. For example, in describing how the defendants violated the DTPA, Centaurus alleges that "Defendants represented to Plaintiff that its insurance policy and Defendants' adjusting and investigative services had characteristics or benefits that it actually did not have," and that "Defendants represented to Plaintiff that its insurance policy and Defendants' adjusting and investigative services were of a particular standard, quality, or grade when they were of another."[15] Centaurus also alleges that Allen & Associates, the seller of the policy, was negligent for failing to secure sufficient coverage for structural damage, personal contents, business-interruption losses, and for misrepresenting that the policy covered those types of damages.[16]

---

[15] Id. ¶¶ 40-41.

[16] Id. ¶ 80.

**C. Whether There is a Reasonable Possibility Centaurus Could Recover from at Least One of the Nondiverse Defendants**

1. <u>Whether Texas Law Permits Centaurus's Claims Against Cunningham</u>

The defendants contend that there is no reasonable possibility that Centaurus could recover against the Adjuster Defendants because as independent adjusters they owed no legal duty to Centaurus.[17] The defendants base this conclusion on the Adjuster Defendants' sworn statements that they never entered into a contractual relationship with Centaurus.[18] Assuming for purposes of this motion that there was not in fact any contractual relationship between the adjusters and Centaurus, the claims for breach of contract, breach of the duty of good faith and fair dealing, and negligence are precluded under Texas law. <u>Blanchard v. State Farm Lloyds</u>, 206 F. Supp.2d 840, 845 (S.D. Tex. 2001) (claims for breach of contract and good faith and fair dealing) (citing <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 700 (5th Cir. 1999) and <u>Natividad v. Alexsis</u>, 875 S.W.2d 695, 698 (Tex. 1994)); <u>Dagley v. Haag Engineering Co.</u>, 18 S.W.3d 787, 791 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (negligence). Centaurus's claims under the Texas Insurance Code and the DTPA, however, are not precluded by this principle. <u>See</u> <u>Rankin Road,</u>

---

[17]Lexington's Response, Docket Entry No. 12, p. 5.

[18]<u>See, e.g.</u>, Affidavit of Larry Couvillon, Exhibit F to Cunningham's Response, Docket Entry No. 13, ¶¶ 2-3. Centaurus does not contest this assertion.

Inc. v. Underwriters at Lloyds of London, No. 10-2226, 2010 WL 4007619, at *3 (S.D. Tex. Oct. 12, 2010); Doss v. Emp'rs Ins. of Wausau, No. 2:10-CV-146-J 2011 WL 208387, at 3 (N.D. Tex. Jan. 24, 2011) (citing Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998)).

The Texas Insurance Code defines a "person" as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster or life and health insurance counselor." Tex. Ins. Code § 541.002(2) (emphasis added). In addition, the Texas Supreme Court has specifically held that "[t]he business of insurance includes the investigation and adjustment of claims and losses." Vail v. Texas Farm Bur. Mut. Ins. Co., 754 S.W.2d 129, 132 (Tex. 1988) (citing Aetna Casualty & Surety Co. v. Marshall, 724 S.W.2d 770, 771-72 (Tex. 1987)). The Fifth Circuit has also held that adjusters responsible for the servicing of insurance policies engage in the business of insurance and are subject to the Texas Insurance Code. Gasch v. Hartford Indemn. Co., 491 F.3d 278, 282 (5th Cir. 2007). And recent decisions within this circuit have held that independent adjusters are subject to the Texas Insurance Code. See, e.g., Rankin Road, Inc., 2010 WL 4007619, at *2-3; Seabrook Marina, Inc. v. Scottsdale Ins. Co., 717 F. Supp.2d 691, 692, 695-96 (S.D. Tex. 2010); Lindsey-Duggan, LLC v. Phila. Ins. Cos., SA-08-CA-736-FB, 2008 WL

5686084, at *2–3 (W.D. Tex. Dec. 15, 2008); First Baptist Church v. GuideOne Mut. Ins. Co., No. 1:07-CV-988, 2008 WL 4533729, *5 & n.8 (E.D. Tex. Sept. 29, 2008); Jones v. Ace Am. Ins. Co., No. 1:06-CV-616, 2006 WL 3826998, at *4-5 (E.D. Tex. Dec. 22, 2006); McNeel v. Kemper Cas. Ins. Co., No. 3:04-CV-0734, 2004 WL 1635757, at *2-3 (N.D. Tex. July 21, 2004). Furthermore, the Texas Insurance Code permits an insured to bring a cause of action through its tie-in statute, see Tex. Ins. Code Ann. § 541.151(2), for deceptive acts or practices enumerated in Section 17.46(b) of the DTPA, see Tex. Bus. & Com. Code § 17.46(b).

The affidavits submitted by the Adjuster Defendants provide additional support for the conclusion that they were individuals involved in the business of insurance under these circumstances. While asserting that he was not employed by Lexington and did not provide estimates to Lexington, Odom states that he was an adjuster assigned by Cunningham "to assist with the investigation of any potential loss at the Plaintiff's property due to Hurricane Ike."[19] Randall Gray, a Vice President for Cunningham, states that "Lexington retained Cunningham Lindsey to perform certain specific adjusting services on its behalf regarding a claim of property

---

[19]Affidavit of Paul E. Odom, Exhibit A to Cunningham's Response, Docket Entry No. 13, ¶ 2.

damages at Unity Pointe Apartments," including the initial inspection of the damaged property.[20]

The court concludes that at a minimum Centaurus has viable claims under the Texas Insurance Code and under the DTPA (through its tie-in statute) against the Adjuster Defendants. See Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 412 (5th Cir. 2004) ("explaining that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court").

2. Whether Centaurus's Claims Against Cunningham are Sufficiently Specific

Lexington argues that even if Texas law permits Centaurus to bring certain claims against the Adjuster Defendants, Centaurus's petition contains only conclusory recitations of law without articulating the Adjuster Defendants' specific actions that violated the law.[21] Centaurus alleges in its petition that the defendants violated provisions of the Texas Insurance Code, "including but not limited to" Section 541.060 (unfair settlement practices) and 541.061 (misrepresentations of insurance policy),

---

[20]Affidavit of G. Randall Gray, Exhibit B to Cunningham's Response, Docket Entry No. 13, ¶ 2.

[21]See Lexington's Response, Docket Entry No. 12, p. 7.

and alleges facts parroting those provisions.[22] See Tex. Ins. Code Ann. §§ 541.060, 541.061. Centaurus also alleges that it relied on the defendants' "unfair or deceptive acts or practices" to its detriment and alleges violations of Sections 17.46(b) of the DTPA, which is accessible through the Insurance Code's tie-in statute.[23] Pursuant to 17.46(b) Centaurus alleges that the defendants "[u]nreasonably delay[ed] the investigation, adjustment and resolution of Plaintiff's claims," "[f]ail[ed] to properly investigate Plaintiff's claims," "represented to Plaintiff that its . . . adjusting and investigative services had characteristics or benefits that it actually did not have," and "represented to Plaintiff that its . . . adjusting and investigative services were of a particular standard, quality, or grade when they were of another."[24]

Centaurus refers only to "defendants" when making these allegations and does not specify which actions are attributable to the Adjuster Defendants, a fact which taken by itself tends to favor a finding of improper joinder. But these general allegations are buttressed by those in previous paragraphs of the petition, which are specifically directed at the Adjuster Defendants. For example, Centaurus alleges that it "provided information to

---

[22]Plaintiff's Petition, Exhibit A to Notice of Removal, Docket Entry No. 1, ¶ 50.

[23]Id. ¶ 39.

[24]Id. ¶¶ 39–41.

Cunningham Lindsey and the Adjusters, as well as opportunities for the Adjusters to inspect the Property"; that the Adjuster Defendants nevertheless "failed to conduct any independent or fair investigation into the damage to the Property"; and that they "failed to properly inspect the Property and their related damages," "failed to properly request information," and "failed to timely and properly report to Lexington and make recommendations to Lexington with regard to Plaintiff's claims."[25]

Other courts in this district have reached the same conclusion when faced with plaintiffs who have alleged similar facts. See, e.g., Rankin Road, Inc., 2010 WL 4007619, at *5-6 (S.D. Tex. Oct. 12, 2010); Harris v. Allstate Tex. Lloyd's, 2010 WL 1790744, at *3-4 (S.D. Tex. Apr. 30, 2010) (granting motion to remand because the plaintiff's petition specifically alleged that the adjuster "was tasked with handling the insurance claim," "failed to fulfill this task in the manner required by the Texas Insurance Code," "misrepresent[ed] the policy coverage," "fail[ed] to attempt a fair settlement," and "fail[ed] to explain the insurer's reasons for denying payment"); Campos v. Am. Bankers Ins. Co. of Fla., 2010 WL 2640139, at *5 (S.D. Tex. June 30, 2010) (same).[26]

---

[25] Id. ¶ 21.

[26] But see Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins. Co., No. H-10-1846, 2011 WL 240335, *1-4 (S.D. Tex. Jan. 20, 2011); TAJ Props., LLC v. Zurich Am. Ins. Co., No. H-10-2512, 2010 WL 4923473, at *4 (S.D. Tex. Nov. 29, 2010).

The court concludes that Centaurus's petition contains actionable allegations specifically directed at the in-state Adjuster Defendants and has not planted them within his petition merely to destroy federal jurisdiction. This conclusion is further supported by the fact that Lexington's argument attacking the vagueness of Centaurus's allegations applies with equal force to the allegations against Lexington as it does to the allegations against the Adjuster Defendants. See Smallwood, 385 F.3d at 575 ("The Supreme Court thus made clear that the burden on the removing party is to prove that the joinder of the in-state parties was improper — that is, to show that sham defendants were added to defeat jurisdiction. A showing that the plaintiff's case is barred as to all defendants is not sufficient.").

### IV. Fraudulent Misjoinder Analysis

Finally, even if the court were to conclude that there was no reasonable possibility that Centaurus could recover against the Adjuster Defendants, the court would still lack jurisdiction because the defendants have not shown that Allen & Associates was joined improperly or fraudulently. Lexington argues that Centaurus's joinder of Allen & Associates in this action constitutes "fraudulent misjoinder," a concept developed by the Eleventh Circuit in Tapscott v. MS Dealer Service Corporation, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated in part on other grounds by Cohen v. Office Depot, 204 F.3d 1069 (11th Cir. 2000).

The Fifth Circuit has not directly applied the fraudulent-misjoinder theory, but it has cited Tapscott with approval and has acknowledged that fraudulent misjoinder of either defendants or plaintiffs is not permissible to circumvent diversity jurisdiction. See In re Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002) ("Thus, without detracting from the force of the Tapscott principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case.").

The fraudulent-misjoinder analysis is two-fold: (1) has one defendant been misjoined with another defendant in violation of the applicable joinder rules;[27] and (2) if so, is the misjoinder sufficiently egregious to rise to the level of a fraudulent misjoinder.[28] Texas Rule of Civil Procedure 40(a) states that

---

[27]The Fifth Circuit has not indicated whether state or federal joinder laws should be used in determining whether there has been a fraudulent or improper misjoinder. The court concludes, however, along with other courts in this Circuit, that state joinder rules should govern since the claimant was required to follow the state's joinder rules when it initially brought suit. See Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co., 670 F. Supp.2d 555, 563 (N.D. Tex. 2009). Even if federal joinder rules were applied, however, the analysis would be largely the same because Texas's joinder rules impose the same requirements as the federal rules. Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 533 (5th Cir. 2006). In addition, Texas state courts applying Texas Rule of Civil Procedure 40 sometimes cite to federal-court cases applying Federal Rule 20. See, e.g., Adams v. Baxter Healthcare Corp., 998 S.W.2d 349, 358-59 (Tex. App.—Austin 1999, no pet.).

[28]Tapscott did not articulate parameters for the "egregious" standard, and courts in this Circuit who have considered the issue
(continued...)

claims against multiple defendants may be joined in one action if (1) "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) at least one "question of law or fact common to all of them will arise in the action." Tex. R. Civ. P. 40(a).

Here, the claims against Lexington and Allen & Associates arise from the same transaction or the same series of transactions – Centaurus's procurement of a commercial insurance policy. In addition, the claims against the defendants will raise common questions of fact, such as the types of damage covered by the policy and the types and amount of damage the property sustained. Moreover, even assuming that Rule 40 is not satisfied, there is no evidence demonstrating that the joinder of Allen & Associates is sufficiently "egregious" to be deemed fraudulent. See Tex. Instruments, Inc. v. Citigroup Global Mkts, Inc., 266 F.R.D. 143, 153 (N.D. Tex. 2010).

## V. Conclusion and Order of Remand

Because the court's focus is on whether there is any claim for which there is a reasonable basis to predict a favorable outcome against any in-state defendant, see Gray, 390 F.3d at 412,

---

[28](...continued)
have not agreed on what circumstances should qualify as egregious.

the court concludes, based on its analysis of Centaurus's claims against both the Adjuster Defendants and Allen & Associates, that this action should be remanded for lack of subject-matter jurisdiction. Accordingly, Plaintiff's Motion to Remand (Docket Entry No. 11) is **GRANTED.** This action is **REMANDED** to the 281st Judicial District Court of Harris County, Texas. The clerk of this court is directed to promptly send a copy of this Memorandum Opinion and Order of Remand to the District Clerk of Harris County, Texas.

    **SIGNED** at Houston, Texas, on this 1st day of February, 2011.

                                                         SIM LAKE
                                UNITED STATES DISTRICT JUDGE